It is 2-10-318 in re Parentage of Zackaria M. The carrier, excuse me, on behalf of the F1, Ms. Phyllis Turco, on behalf of the F8, Mr. Brian Office. Good morning, counsel, or good afternoon, I should say, I'm sorry, and I apologize for the late start. Good afternoon. May it please the court, this is an appeal taken from an order for we presented two arguments on appeal, that being that the custody order is improper and likewise that the visitation portion of the order is improper. This court issued an order to counsel in this case, directing that we be prepared to discuss the significance of Supreme Court Rule 304B6 regarding jurisdiction. Correct. I certainly apologize to the court for not having addressed this in my brief, but at this point, the question is whether or not 304B6 is a basis for jurisdiction in this case. You can keep your voice up a little bit. There's a fan on the ceiling and it sometimes interferes with the transmission of the sound. 304B6 provides that a custody judgment is appealable without the finding pursuant to 304A. And this quite clearly is a custody judgment. So therefore, it falls within the terms of the rule. There might be two questions or two questions that I perceive that the court may have, unless the court wishes specifically to direct me, but one of the questions would be whether or not a custody proceeding includes a visitation aspect. And it is our position that a custody judgment does include visitation, and we would address three matters in support of that. Do you think custody also entails support orders? I do not. Well, the support order is entered in so far as what is concerned, a child. And it relates to the child's relationship with either or both parents. My point is, is that I submit to you that anything that relates to the relationship between the children or the child and a parent or parents is custodial in nature. Well, your honor, I've given some thought to the problems in this case. And one- Can you, let me interrupt him. Just can you see a situation where the trial court enters a custody order and then starts to proceed with visitation order while it's up on appeal to us? And then the next thing that's appealed is the visitation order, and then the next thing after that, he discusses or disposes of the support. And then that is appealed. And then the next thing they start to discuss is medical expenses and possibly college education. The question is, are we going to have four or five appeals relative to child custody and relationship between the parents? Or, because Leopondo, which this order was directed at, relates to things other than child custody. It relates to marital property, it relates to goodwill insofar as a business is concerned. It relates to dissipation. It relates to virtually everything that can have anything to do with a divorce slash dissolution, but doesn't necessarily relate to the relationship between the child and the parents. I understand your honor's concern. I will say, however, that my own definition of matters that pertain to the relationship between the parent and the child are custody and visitation. And matters of support, although they benefit the child, they benefit the child indirectly since the order for support does not flow strictly between the parents and it does not have that direct relationship between the parent and the child that custody and visitation does. So if a trial court enters a judgment relative to visitation and the order says something to the effect that while the child is visiting with the parent, the non-custodial parent will be suspended or diminished by a certain amount. You're telling me those aren't related? Well, I mean, I understand that they're related. You could argue as well that property is related in terms of what the ability that each parent has with the allocation of property to care for the child or to provide for the child. Okay, I'll ask one more question. How many pins can you stick in the head of an angel? Well, but your honor, I mean, I appreciate that question. But this is what the rule says. And the rule, for instance, well, the rule that we're specifically talking about, 304B6, talks about a custody judgment. I would submit that there are at least two other rules and one statute that would indicate what the meaning of a custody judgment is. And those would be Supreme Court Rule 900 that talks about expediting cases. And there it defines a child custody proceeding to mean an action affecting custody or visitation. This obviously has to do with my argument that visitation is a part of custody. Likewise, Supreme Court Rule 311 regarding the reviewing court's accelerated docket talks about the matter affecting best interest of a child. Clearly, visitation pursuant to Section 607 of the Illinois Marriage and Dissolution of Marriage Act involves a best interest determination. So those are my primary three bases for asserting before the court this afternoon that custody and visitation are the two matters that are appealable without the 304A finding. The interesting part, though, of, I believe it was 311, was that the initial rule that came out talked about visitation. And on hearing, after hearing and after hearing comment, visitation was removed from the expedited docket issue. So we might have some ambiguity between the two rules. Well, and it may be that there is some ambiguity, and I cannot represent to the court that I've done that sort of historical analysis on the rules. Well, I know that because I was adamant that it should be removed, so I wrote some comments. But to return to Justice McLearn's question about support issues. For instance, this particular order, and this connects to the argument by the father in this case, that visitation was a reserved issue, and therefore, that it doesn't have finality. Finality presumably being a requirement not only under Supreme Court Rule 301, but also under the 304B6 that we're talking about now. In the order in this case, there are four reserved matters. One is child support, another one is contribution for medical expenses. A third is future educational expenses, which I would understand to be college expenses, and the fourth is visitation. For instance, on college expenses, if when we're talking about finality of a judgment in a dissolution matter, or in this case, in a paternity matter, a parentage matter. One hardly could conceive of the situation, for instance, in this case, of a ten-year-old child, where it would be right to adjudicate a matter of college expenses. And this is something that particularly caught my attention as I attempted to analyze this case, and attempt to analyze what the courts really are looking for when they are looking for finality, or when they are talking about a reserved issue. Because it would seem to me that in any case where parents of a young child are divorced, or are involved in a parentage action, that it is going to be inappropriate to address post-high school expenses under the Illinois Marriage and Dissolution of Marriage Act. Typically, trial courts are probably going to address that issue as reserved. I would submit to the court, for instance, that that reservation is not something that impairs the finality of the judgment. So we have, it seems to me, because it's raised by the father's brief, this issue about reserved, the question of what it means to reserve an issue. And the case from this course, Margeco, which is cited both by the father, I believe, and certainly in my reply brief, it talks about the fact that the trial courts tend to use the term reserved issues. Sometimes when an issue is really reserved, and other times when it's decided, but the court expects that the issue will be revisited in the future. And with reference to the language in this order that reserves the issue of visitation, it's our position that the trial court, very clearly in that language, meant to deny visitation for the present time, and meant to deny that, visitation based on the fact that the mother is incarcerated, was incarcerated at the time of the entry of the order. And that is particularly the problem from our point of view, and the argument that we are advancing on the merits before this court. And before I go into that, are there other questions about 304 B6 or about the reservation of the issue? No, I think I'd ask you to go on to that and also take some time to address the best interest issue. Well, thank you. It is our position, then, that visitation is a part of custody. Section 607 of the Illinois Marriage and Dissolution of Marriage Act states that a parent not granted custody shall have the right of reasonable visitation. In this case, before the order of default was entered, the mother had on file a petition for visitation. She was at that time incarcerated, and her counsel at the time in filing the motion addressed the court, the transcript is in the record, and said that he was concerned that the mother was not receiving visitation. Thereafter, mother's counsel was allowed to withdraw, and a default order was entered. So there's discussion in the mother's brief, in our brief, to the effect of, what does a default order admit? What is the effect of a default order? And in this case, there, to the best of my recollection of the record, is not a request by the father to exclude the possibility of visitation. So, I mean, there isn't anything that the mother could have admitted in this default context that prevents her from having visitation. The trial court was aware of the fact that she wanted visitation. She had a visitation order on file, and to the best of my recollection and reading of the record, there was no request by the father that she be denied visitation. There are a series of, I believe, four cases, and the one we rely on is frail versus frail, the first of those cases. Which says that the mere fact of a parent's incarceration is not a sufficient basis for the, excuse me, the denial of visitation. Could I interrupt a minute? Yes. To be sure, am I correct in concluding that you're not objecting to the entry of judgment relative to a change in permanent custody, so much as you're objecting to the fact that the trial court never considered what reasonable visitation was? You are correct in concluding that our major argument and the major thrust of our argument has to do with the denial of visitation. Well, what my point is, is that the alleged error could affect a lot of things other than merely visitation. But the point is, what relief are you seeking? Because if she, 24 hours after this default order was entered, the record says that she was going to be sentenced on at least one of the charges that she was found guilty of. And if she's in prison or jail right now, seeking a vacation, a reversal of the permanent custody order seems somewhat irrational. How can she take custody of a child when the child, I believe, is a different sex than she is? Is it- Is a male child. And she's in a female penitentiary. Correct. And I will acknowledge, Chair, that I've given a lot of thought to this. And with reference to my argument that there should be a best interest finding and that this record doesn't have that, but I will grant to your honors that her ability to exercise custody during a period of incarceration, physical custody, is impossible. That, of course, does not, however, address the joint custody argument. If that addresses only physical custody, and the guardian ad litem's report is appended to the Eppley's brief. I, but the report was made at a time when the mother was in and out of jail. I mean, the record really doesn't reflect why she was in and out of jail. I believe that the reason probably is that there were charges in different counties or additional charges brought at some time so that there was, but we really don't know that. All we know is that she was in and out. And the reason we know that is because of what is reflected in the guardian's report. So to answer your honor's question, yes, it's clear that physical custody is impossible under the circumstances of her incarceration. It does not, however, for instance, answer the problem of joint custody and the absence of a best interest finding in this case, which is what the first argument is about. But I think it does discuss joint custody. I think Ms. Gerken's report is pretty clear. She said, well, I would normally contemplate joint custody in a situation like this. It doesn't make any sense, and I'm trying to get to the conclusion, because not only is she in and out of jail, she's on bond, which means that there will be things she'll have to answer for. And I mean, I think we can infer that if she has to answer for him and it's not successful, it's going to be an even longer period of time. I'm understanding what your honor's saying, and that report is in there. But it is a rare case, I think this is quite a rare case, where there is no discussion at all before the bench. Not even a recitation of best interest in the final order. There is really no way to know what the court relied upon, or if it relied upon anything, if it made a best interest finding in this case. Except possibly for that guardian's report, okay? But the guardian's report, I believe, predates the order appealed from by about one year. And I guess I'm going to go back to Justice McLaren's question. So in light of what you've just told us about the lack of a best interest finding, the issue in your mind of joint custody, what relief are you asking from this court at this time? Well, we are specifically asking for the relief, first of all, with reference to the visitation order, that that portion of the order be reversed and there be a ruling on, so that there is an opportunity for the court to decide the visitation issue in a manner that takes into consideration best interest. Because whatever the guardian's report may say about the exercise of custody, it doesn't say much about visitation. There is a supplemental report of the guardian, also included in the FLE screen, in which the guardian says, I would have to think about, I mean, bottom line is to the substance of, I would have to think about it a little bit more. I would have to know more about it. So with regard to the visitation, then, are you asking relief in any other manner for anything else? Just the visitation? Visitation, and with reference to the custody, our position being that it's not supported by best interest. But I mean, specifically with reference to the custody, I mean, they're really, insofar as the guardian's report may support, and certainly, I think, does support physical custody. I think there's more argument about whether or not it supports joint legal custody. That's one issue, but visitation is another issue. I mean, there is just nothing that a default order could be based on in this case. There's not a guardian's report, there's not a request for no visitation by the father. And on top of all of that, there is a request for visitation by the mother's motion. Ms. Berkoff, could we take additional notice of your client's incarceration? Maybe I should instead of saying could, may we? Should we? Well, Your Honor, there's notice of appeal in this case. And so I think you can take, I think that the notice of appeal is part of the record very clearly. And in the notice of appeal, my client represents that she's incarcerated. So, I certainly believe that your honors can take note of that and that she- Does she say where she's incarcerated? I don't know if she does that, but. Actually, I believe it does talk about her having been transferred from the King County Jail to the penitentiary. I believe it does, yes. Thank you. You'll have additional time on your end. Thank you. Mr. Hines? Good afternoon. I'd like to also discuss 304B6 and again apologize to the court for not addressing that in my brief. I have to disagree with Justice McLaren about his stances to the issues that fall under the 304B6. I believe that the custody ruling alone is governed by that rule. And once it's determined that that issue is final, then the appeal is free to go. I'm not quite sure the position of counsel on the issue of custody. I understand she would like joint custody, but I would assert that that is impossible given the fact that the child lives with his daughter in this area and the mother is incarcerated 180 miles away. At Decatur, I don't think that it's practical to believe that mother at this point could voice her opinions as to what happens with the child from the penitentiary. And also, domestic relations court, as I understand it, don't have the authority to order joint custody. The parties have to agree to that. And there is no agreement between the parties. Okay, but this counsel is not a trial court where we look at or should look at necessarily the practicalities. This is a situation, is it not, where we need to look at what the trial court did in reaching its decision, that is, whether or not it took into account best interests of the child in making the ruling it did. Isn't that correct? Yes, it is. And how would you address the fact that the word best interests appears no place in the written order nor in the report of proceedings from the day that the hearing took place? I can't explain that. It does appear in the petition of the father for custody, but it does not appear in the order. But my position is that given the fact situation of this case, given the fact that the child has lived with his father in the past with no problems, given the fact that the mother is incarcerated, the trial court had no other choice. Is there any de facto visitation going on? At this point, no. The problem is this was a visitation. Is there any de facto contact between the mother and the child? To my knowledge, no. Is that because of her voluntarily refusing to do so, to your knowledge, or is it because your client refuses to allow any contact? Neither. I don't believe my client has received any contact by her. The problem is that this is a default situation. The court had no evidence to base a visitation order on. I assume he had no idea about the facilities at the care, about whether it's in the best interest of the child to travel a six-hour round trip for visitation with the mother. So until the mother became involved in the case, which she didn't until after the default order was entered, the court could obtain no evidence as to the visitation. There's no question the trial court and the father believe that she should have visitation. No question. In what has been characterized as the notice of appeal in this case, there is an allegation that she's been in custody, that she's not been notified of any court dates, that she doesn't have a copy of the order that she's referencing, and that she doesn't believe a final order has been entered. Is there anything in this record that would indicate things were sent to her to indicate the default, the final order, the time frames? There should be in the record. If not, we have copies of the service. Well, I mean, if they were done, if they were sent to that address. I think it would be in the record, yes. And she did have a copy of the final order because she based her motion for what she called it? Motion to appeal. Motion to appeal on the terms of that order. So she did have, she had all notices, she had all documents related to the issues. You were not trial counsel, as I recall from reading through. Are there incidents in the record where the parties in front of the court talk about the report of the guardian ad litem, the purpose of it, its findings? It's my understanding that the report of the guardian ad litem came out, was issued around the time that her attorney withdrew. The guardian ad litem did, on several occasions, attempt to discuss the report in a possible parenting agreement with the mother and was not successful. But I don't believe that the report was discussed before the judge at any point. And do we actually have any idea if the judge saw this report? Yes, he did. And how do we know that? It was in open court. The guardian handed him the report. And that would have been fairly contemporaneous with the date that it was issued? Yes. Do we have any idea if the court saw the subsequent letter that I think Ms. Perkel is referring to as a, not a modification, but an explanation? Supplement, yes. Is there any indication? I don't believe the court did, but I don't have any separate proof of that. So the issue of visitation was reserved because the trial court could not obtain the evidence required to do a visitation order because the mother didn't cooperate. She wasn't there to give evidence. She didn't respond to the default order. Once her attorney withdrew, I believe it was three months before the default order was entered, she had no contact with anyone regarding the case. Now, she's indicated that she thought an attorney would be appointed for her. Isn't that correct? Doesn't the record reflect that? I believe she did, yes. And I believe she was told by the guardian that there would not be. But, again, I don't have separate evidence of that. If she was told that, and this is for argument, and I'm going to ask the same question to Ms. Perkel so maybe she can think about it, if she was told that, does a trial court in a situation of this nature have an obligation to sua sponte, say, I am going to appoint an attorney to represent this woman whose interests need to be protected? Do they have an obligation? No. Now, this was, in essence, a modification of custody, right? So, technically, the standard of proof that this trial court should have used if it had conducted a hearing would have been different, that is, would have been clear and convincing. Isn't that correct? That's correct, yes. But that didn't happen. There was no hearing. And the mother, in fact, did have a petition for visitation pending, drafted by her attorney, who withdrew, but that petition was never called for hearing. And, again, the mother had no contact with the court or the father or the guardian after that point. Justice Eno asked you, that was, I think, never proven. When you shook your head no, but then you said something, there was no hearing. And the point is, is that the burden of proof was clear and convincing, but there was a default order, so that meant that all the allegations of fact were established, regardless of what the burden of proof was, whether or not the conclusions to be drawn from those facts was established by clear and convincing judgment for want of a better term, is somewhat different. And it raises an interesting point, which is, if facts are stipulated, is this clear and convincing that this should result in a change of custody, or is it the facts that have to be established by clear and convincing evidence? And once they're clearly and convincingly established, does the trial court exercise its judgment or its discretion? Because this is in a court of chancery, he's granting injunctive relief. So is it an abuse of discretion once the facts are clearly and convincingly established? I don't believe so, but if I can just interject here, there were past changes in custody in this case before this court. The mother had custody first. When she was first incarcerated, custody was transferred to the father. Temporarily, correct? Temporarily. Right, not permanently. Then when she was no longer incarcerated, the child went back to her. And then when the father found out how long she was going to be in prison, he went in for sole custody. So the court has heard evidence. Heard, well, first of all… Heard evidence? …at the hearing for the transfer temporarily to the father. Okay, but that was prior to the petition filed for permanent and temporary custody, and indeed, wasn't the section of the statute cited in that petition where we asked for permanent custody also just the section that referred to temporary custody? Isn't that what the record reflects, counsel? I'm sorry, I don't have that petition in front of me, but that's a possibility. Any other questions? No further questions. No, thank you. Thank you, Your Honor. Ms. Perko? Ms. Perko, as I said, I would ask you the same question, and so I'll get it out of the way. I cannot remember the name of the case. It's a senior moment, but there is a Supreme Court case indicating that even in a private matter, the state has an interest in making sure that the rights of the parties are protected. And this case emanated out of Kendall County, so I know of it generally, and we had it here. So the question is, when she did not file an appearance, and about 90 days or close to 90 days had gone by, does a trial judge have any obligation sua sponte to appoint someone to represent her? Well, I think the question of whether the court has a duty sua sponte to appoint is different than the question of the care or the determinations or the basis for determinations that the court must have in order to enter an order. I mean, I see those as very different issues. And as I say, this could be a different case, or my argument would be very different, if there had been even a pleading by a father that said that visitation at the jail or penitentiary was inappropriate for whatever reasons. I mean, during my opening argument, I referenced that there appear to be four cases in the state of Illinois that talk about a parent's right or lack of right to have visitation while they're incarcerated. The first of those cases, I read to say that the mere fact of incarceration does not prima facie negate the right or the opportunity for visitation. Each of the three succeeding cases do not find that visitation should have been granted. But I guess the other question, though, is did she actually have a petition for visitation pending? And while there was a piece of paper there, I know McHenry County has certain rules, internal rules that things have to be called for hearing in a certain period of time. That not happening, that document is a piece of paper, but it is not a relevant piece of paper to the trial court. And you seem to be placing a lot of your argument on the fact that she asked for visitation, but didn't do anything beyond that. I placed some, with due respect, I placed some significance on that. I placed additional significance, and perhaps more significance, on the fact that it is my position that visitation is a part of custody and that that is pursuant to Section 607 of the Marriage and Dissolution of Marriage Act, which says that a parent not granted custody has reasonable rights of visitation. So I do not, it is my position that the court cannot make a judgment on custody without making a judgment on visitation. Would it be safe to say that you don't necessarily believe that your client had the right to have an attorney so much as she had the right to have the trial court render a deliberate decision on visitation? That is my position. And I want to say this one thing, and that is this is a mother who had custody for eight or nine years. I mean, it's not completely clear, but for certainly most of the child's life. And I do take exception to the comments that are made both in the answer brief as well as during argument on behalf of the father this morning that the mother didn't cooperate in whatever. I mean, this is not reflected in the record. There are the two guardian, the one guardian report and the follow-up. None of these indicate any lack of cooperation. I am appellate counsel, and I rely on the record. There is nothing in this record that supports a conclusion that my client did not cooperate in facilitating a visitation schedule or arriving at a visitation order. So I do take exception to those comments, and it is our position. I wish to object. My understanding of what opposing counsel said did not indicate that your client on her own volition refused to cooperate so much as it was there was no information or cooperation. Now, that to me, I can interpret that to mean that there was no cooperation because she was incarcerated and she was prevented from doing so by prison authorities. So it's not that I'm attempting to defend opposing counsel, but my point is that the fact that your client is in jail leaves alternative conclusions. And I got to that when I asked about was visitation refused and was visitation sought. And his response essentially was, I don't know about whether she is seeking it. And the thing is, I don't know either. But the fact that he hasn't received anything doesn't mean she isn't trying right now. But for some reason, prison authorities are preventing her from doing so. So when you characterize his position to say that she wasn't cooperating, I don't think is totally accurate. I think what is correct is there hasn't been any action on her part, but we don't know why. I'd like to move on to another point, and that is if you could address in light of Justice McLaren's earlier question to opposing counsel, in view of the default judgment that was entered, what were the obligations of the trial court with respect to holding a hearing or burdens of proof? Well, the Code of Civil Procedure regarding default orders, and it is cited in my opening brief, provides the option of the court requiring approval. And it's our position that that would have been appropriate and actually mandated in this case, because the law is clear that the record has to reflect a basis for best interest. I mean, the court has said, well, the trial court doesn't have to specifically identify, but somehow that record must support the conclusion that best interests were considered and determined by the trial court. And certainly with reference to the visitation issue, it's our firm position that there is nothing in this record that indicates any support for a best interest conclusion. I mean, I think we can argue for a long time about the custody because of the fact that my client's incarceration, but for the best interest, no, because there are four cases that talk about incarceration and whether or not incarceration, in and of itself, would indicate that visitation should not be granted, and the cases simply don't say that. Even the ones that go against granting visitation to an incarcerated parent don't go that far. They simply find that on the facts of those cases, and the facts of those cases, may I point out to the court, are very different from the facts of this case. Two of the three cases in which visitation was not allowed to the incarcerated parent deal with the situation of a noncustodial, throughout the child's life having been the noncustodial parent and not establishing the close relationship existed, and also very young children, I'm saying under the age of six, so that even if they had been the custodial parent, their relationship might be something different. This is so different in this case as it was, and then the third case dealt with a murder of one of the child's relatives. Again, a very different situation where we're dealing here with a nonviolent offender, according to the GAL's report, and a very long term in terms of the child's life of having been the custodial parent. Who has the burden of proof to establish that visitation in the jail setting, whether it be at the state level or the local level, is appropriate? Well, I don't know that the cases are completely clear on who has that burden, and I believe that every parent, and that is what 607A says, a parent has visitation rights. I think that to deny visitation based on incarceration is a denial of visitation or it's a restriction of visitation. I believe that the other parent has that burden or that the court has to have some evidence in front of it that makes that finding of serious endangerment to the child something that's very clear. We have a guardian here, although she was not appointed as the representative, job representative, nor was she appointed as the attorney. She was the guardian. It doesn't include any other appointments to my knowledge, reading the order. So my question is, in her supplement, which I call the letter, she relates to her own practice of criminal law and she doesn't know that a jail is a good place to actually have a physical visit, not because of what will happen between mother and son, but because there are a lot of people there who are unhappy and he would have reason to come in contact with those persons. You don't consider that in any way any sort of a fulfillment of the obligation you're talking about? As I understand what the guardian reported in that supplementary letter was that she'd have to think about it and know what the facility was like. And I mean, I think that that's fair because if you visited facilities, you know that they can differ considerably in what is offered and where the visitation would occur. So I believe that that is an apt matter for the guardian, for instance, to investigate. It's an apt matter on which evidence would be adduced. But I don't think that there's a general rule about that because I think that the institutions differ. And I think that the child differs as well. I mean, one of those cases that's cited in the briefs talks about the idea that it was the father in that case who's going to use the ruse that he was at college and that the child was, that the penitentiary visit was a college visit. Well, that's not very practical. We don't know from this record what this child knows about his mother's incarceration and so forth and so on. Those are all apt matters for inquiry, but that inquiry wasn't- Was the college jail? What is to prevent your client, although you're only appellate counsel, but your client, to, at this point, file a petition in the trial court asking for visitation in her current situation? What would prevent her from doing that? Well, I think that because it's my interpretation of the order that was entered, that visitation was denied because she's incarcerated. I think if she wants to modify that, she has to show substantial change in circumstances. I think that's the test for modification. And she doesn't have a substantial change in circumstances if she's still incarcerated. I think that's an unfair burden on her. Would it be reasonable to conclude that if your position is based upon the concept that this woman has visitation rights and there were no findings of facts or conclusions of law relative to her visitation rights or how they were affected, that we have no ability to review to determine the merits thereof, and therefore, it should be vacated or abandoned? That's my position. Anything else? Nothing further, Your Honor. Anything else? No, no. Okay. All right, thank you very much, counsel.